## William Benson et al., Plffs. in Err., v. Sarah E. Maxwell et al.

A married woman has a right to loan money to her husband and to take security therefor, or to receive payment thereof by conveyance of his property. He has a right to prefer the claim of his wife or of any other creditor. She must satisfy the jury, however, that the money loaned was actually hers—not given to her by her husband, and not earned by her while married to him; for by the law of Pennsylvania the earnings of a married woman belong to her husband.

Where a man receives as a loan money from his wife, which came to her from her father's estate or other outside source, he has a right to give her a note for the same, and secure the payment of such note by a mortgage on his land, even if he was indebted to others, or was in failing circumstances.

To avoid a deed for fraud, it is not enough to show that the vendor intended to hinder, delay or defraud his creditors, but it must also be shown that the vendee received the deed with like intent to hinder, delay or defraud the creditors of the vendor; and the burden of proof is always upon the one alleging the fraud.

An instrument which in the form of an absolute deed is in reality a security for a claim, is a mortgage and not a deed, and where there is no defeasance recorded, it is but an unrecorded mortgage, and its lien is postponed to that of a judgment entered subsequent to the execution of such instrument.

(Argued April 24, 1888.    Decided May 14, 1888.)

January Term, 1888, No. 370, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.    Error to the Common Pleas of Erie County to review a judgment in favor of defendants in an action of ejectment, May Term, 1884, No. 149.    Affirmed.

The facts appearing at the trial, before GUNNISON, P. J., were stated in the charge to the jury which was as follows:

This is an action of ejectment brought to recover the posses-

---

NOTE.—It will be observed that the deed in this case was executed prior to the act of June 8, 1881, P. L. 84, requiring that the defeasance be in writing to change the deed absolute upon its face into a mortgage.

sion of a lot of land in the borough of Waterford. Both parties claim by virtue of separate sheriff's deeds, in pursuance of sales of the lands upon actions upon mortgages given by Sheldon Maxwell to Sarah E. Maxwell, and to Benson & West, respectively.

The mortgage given to Mrs. Maxwell was the first executed and recorded, and was prior in lien to that of the plaintiffs, Benson & West. The sale on the Benson & West mortgage was the first made; and if the mortgage to Mrs. Maxwell was the first lien, it was made subject to the latter mortgage, which, according to the law of this state, was not devested of its lien by that sale. According to the records, as they have been offered in evidence, this was the fact.

Now, after the sale to Benson & West, Mrs. Maxwell, or John S. Maxwell in trust for her, which is the same thing, proceeded to foreclose her mortgage, and in that proceeding caused the property to be sold and became its purchaser. If these were all the facts, there would be nothing to present to you for your consideration and decision. There would be no question but that the title to the land is in Mrs. Maxwell.

In order to show a better title in themselves than Mrs. Maxwell's title, the plaintiffs allege that the conveyance made December 5, 1873, from Sheldon Maxwell to John S. Maxwell, which has been offered in evidence, was a voluntary conveyance without consideration, and in fraud of the creditors of Sheldon Maxwell, among whom were Benson & West, the plaintiffs in this case. If this is true, the deed to John S. Maxwell was null and void, and the title remained in Sheldon Maxwell; and the judgment entered September 30, 1875, before the date of Mrs. Maxwell's mortgage, was a lien prior to that mortgage. The effect of that would be that it not being a first mortgage—there being a judgment prior to it—its lien would be devested by the sale on the Benson & West mortgage, and the sale to Mrs. Maxwell afterwards conveyed no title whatever.

This question is entirely a question for you. If you find from the evidence that the deed was without consideration, given by Sheldon Maxwell and received by John S. Maxwell with the intent to hinder, delay and prevent the creditors from collecting their debts, then the deed was null and void as to those creditors; and for the reasons I have given you, the plaintiffs' title would be good, and they would be entitled to recover.

A married women has a right to loan money to her husband

and to take security therefor, or to receive payment thereof by conveyance of his property. He has the right to prefer the claim of any creditor, his wife or any other. She stands exactly in the same position that any other creditor would. She must, however, satisfy you that the money loaned was actually hers—not given to her by her husband, and not earned by her while married; for, by the law, the earnings of a married woman belong to her husband. You have heard the witnesses on this point. If you believe the testimony offered by the defendant, the money for which the note was given was hers.

The plaintiffs claim also that the consideration of the conveyance to John S. Maxwell was so inadequate as to make the transaction fraudulent. That is also for you to decide. You have heard the testimony on both sides in relation to the value of the lot.

It was also claimed that the deed to John S. Maxwell was, while in form an absolute deed, in reality a security for the claim of Mrs. Maxwell, and therefore was in reality a mortgage instead of a deed; that there having been no defeasance—which you will understand is an agreement for the reconveyance of the property on the payment of the debt—recorded, it became an unrecorded mortgage; and its lien should therefore be postponed to that of the judgment of Hutchins. If you believe from the testimony that the deed was given as a security for the debt due Mrs. Maxwell, that would be so, [but if you believe the deed was given in consideration of the debt, and in payment of it, with no agreement for the reconveyance upon the payment of the debt, then it was an absolute deed, and not a mortgage. Is there any evidence of an agreement for such a reconveyance? Because if there was not, it was not a mortgage but a deed, as claimed by the defendant; and if it was a deed, unless it was without consideration and given and received with the intention to hinder, delay and defraud creditors, the Hutchins judgment did not become a lien upon the land; and as a consequence the defendants would be entitled to a verdict in the case.]    [9, 10.]

The whole matter is in your hands. If you believe the conveyance to John S. Maxwell was bona fide in consideration of and in payment of an actual, valid debt, due from Sheldon Maxwell, then the Hutchins judgment never became a lien upon the land, and your verdict should be for the defendant. If, however, you find that the deed was given without consideration, and was

given and received for the purpose of defrauding, hindering, and delaying the creditors of Sheldon Maxwell, then as to the plaintiffs no title passed from Sheldon Maxwell to John S. Maxwell, and the Hutchins judgment became no lien upon the land, and your verdict should be for the plaintiffs. . . .

Further facts are as follows:

The deed from Sheldon Maxwell to John S. Maxwell was recorded September 23, 1875. A judgment was entered September 30, 1875, against S. Maxwell and M. H. Terry, in favor of D. C. Hutchins, for $1,000. John S. Maxwell, by deed, dated October 13, 1875, and recorded November 29, 1875, conveyed the lot in dispute back to his father, Sheldon Maxwell, who executed a mortgage December 22, 1875 (which was recorded December 30, 1875), on this property, in favor of John S. Maxwell, in trust for Sarah E. Maxwell, alleged to be to secure the debt of $1,562 due Sarah E. Maxwell, with interest, from April 1, 1870.

Verdict and judgment were for defendants.

Plaintiffs presented, *inter alia,* the following points:

1. If the jury find from the evidence that Sheldon Maxwell made the deed to his son, John S. Maxwell, to delay and hinder his creditors in collecting their debts, then it was and is void as to his creditors, Benson & West and D. C. Hutchins.

*Ans.* The first point cannot be affirmed in the broad sense in which it is stated. If the jury find that Sheldon Maxwell made the deed with the intention of delaying and hindering his creditors and that the intention was known to and shared by John S. Maxwell, then the deed was void as to the creditors of Sheldon Maxwell. 1

5. If the jury find from the evidence that John S. Maxwell and Sarah E. Maxwell kept the deed made December 5, 1873, in their possession, unrecorded until September 27, 1875, unknown to the said Benson & West and D. C. Hutchins, the creditors of Sheldon Maxwell to a large amount, and increasing his debts, then the deed would be void as to the said creditors of Sheldon Maxwell.

*Ans.* Refused. If the deed was valid when made, the delay in recording it did not avoid it. 2

Defendants presented the following points:

1. Fraud is never to be presumed, but must be proved by the party alleging it; and in order to avoid a deed it is not enough to show that the vendor intended to hinder, delay, or defraud his creditors; but it must also be shown to the satisfaction of the jury that the vendee received the deed with like intent to hinder, delay or defraud the creditors of the vendor.

*Ans.* Affirmed. 3

2. If the jury believe from the evidence that Sheldon Maxwell had received money belonging to his wife, the defendant, which came from her father's estate or any other source, he had a right to give her a note for the same, and secure the payment of said note by mortgage on his land, even if he were indebted to others, or in failing circumstances.

*Ans.* Affirmed. Money received by the wife in any other way than from her husband, or from her own earnings, is her sole and separate property; and if she loans it to her husband, he can lawfully give her a note for the loan, and secure it by a mortgage, even if he were at the time indebted to others or in failing circumstances. 4

3. If the jury believe from the evidence that Sheldon Maxwell was indebted to his wife in the sum of $1,562, for money received by him prior to April 1, 1870, belonging to her, he had a right to give her the note of that date, and afterwards secure payment of the same by the mortgage upon which the property was afterwards sold and purchased by Mrs. Maxwell, the defendant, at sheriff's sale; that the transaction was not *per se* fraudulent, but must be treated just as are the transactions between ordinary debtors and creditors.

*Ans.* Affirmed. 5

4. If the jury find from the evidence that the deed made by Sheldon Maxwell dated December 5, 1873, for the land in dispute, was received by John S. Maxwell in trust for his mother, the defendant, for a debt owing from Sheldon Maxwell to her, it was not fraudulent, and the judgment in favor of D. C. Hutchins v. Sheldon Maxwell, entered while John S. Maxwell so held the title, was not a lien on the land.

*Ans.* If the jury find from the evidence that the deed to John S. Maxwell was given in consideration of the debt due from Sheldon Maxwell to Sarah E. Maxwell, and in payment of the debt, and not to secure its future payment, it was not fraudulent as to

other creditors unless it was made and received with the intention of defrauding the other creditors, and not of preferring Mrs. Maxwell to the other creditors; and the judgment entered by D. C. Hutchins against Sheldon Maxwell would not be a lien on the land while the title remained in John S. Maxwell. 6

5. If John S. Maxwell received the deed of December 5, 1873, without any intention of hindering, delaying, or defrauding the creditors of Sheldon Maxwell, but for the purpose of paying the debt owing his mother from Sheldon Maxwell, he had the right to make the arrangement by which his mother should have the first lien by mortgage security on the property for her debt, before conveying the land back to Sheldon Maxwell; and the agreement is no evidence of fraud.

*Ans.* Affirmed. 7

6. If the judgment No. 562, September term, 1875, in favor of D. C. Hutchins v. Sheldon Maxwell and M. H. Terry, entered September 30, 1875, was not a lien on the land in dispute, the verdict should be for the defendants.

*Ans.* Affirmed. 8

The assignments of error specified: (1, 2) The answers to plaintiffs' points; (3–8) the answers to defendants' points; and (9, 10) the portion of the charge in brackets.

*S. A. Davenport* and *Benson & Brainerd,* for plaintiffs in error.—As to the effect of the concealment of deeds of conveyance of the character of the one in suit, see Coates v. Gerlock, 44 Pa. 43, 46, 47; Blennerhassett v. Sherman, 105 U. S. 100, 117, 26 L. ed. 1080, 1086; Hildreth v. Sands, 2 Johns. Ch. 47; Bank of United States v. Housman, 6 Paige, 538; Kempner v. Churchill, 8 Wall. 362, 19 L. ed. 461; Bunn v. Ahl, 29 Pa. 387, 72 Am. Dec. 639; Haymaker's Appeal, 53 Pa. 306; Jacoby's Appeal, 67 Pa. 434–436; Miner v. Warner, 2 Grant, Cas. 448; Clark v. Douglass, 62 Pa. 408; and Bump, Fraud. Conv. p. 32.

Upon the subject of deeds given to secure the payment of money, see Kellum v. Smith, 33 Pa. 158; Rankin v. Mortimere, 7 Watts, 372; Kerr v. Gilmore, 6 Watts, 405; Colwell v. Woods, 3 Watts, 188, 27 Am. Dec. 345; Friedly v. Hamilton, 17 Serg. & R. 70, 71, 17 Am. Dec. 638; Manufacturers' & M. Bank v. Bank of Pennsylvania, 7 Watts & S. 335, 42 Am. Dec. 240, and Corpman v. Baccastow, 84 Pa. 363.

*F. F. Marshall* and *G. A. Allen* for defendants in error.

OPINION BY MR. JUSTICE PAXSON:

If the plaintiffs in error have any just cause of complaint, which is by no means clear, it is with the verdict of the jury and not with the rulings of the learned judge below. A careful examination of the ten specifications of error, involving the charge of the court and the answers to points, fails to disclose any rulings that can be fairly criticised.

The questions whether the deed from Sheldon Maxwell to his son John S. Maxwell was given to hinder and delay the creditors of the former, and whether the said deed, though in form a conveyance absolute upon its face, was in reality a mortgage, were left to the jury under clear and adequate instructions upon the law. The court could not declare the deed to be a mortgage as a question of law, because it was to be determined by the oral evidence.

We are not called upon to say whether the verdict was right; as we have no control over it, we will not criticise it. We do not revise verdicts and grant new trials.

Judgment affirmed.